**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT KNOXVILLE**

**SEPTEMBER 1997 SESSION**

FILED

December 30, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | **C.C.A. NO. 03C01-9611-CR-00401** |
| Appellee, | ) | |
| | ) | **SULLIVAN COUNTY** |
| VS. | ) | |
| | ) | **HON. FRANK L. SLAUGHTER,** |
| **ROBERT BOSTON,** | ) | **JUDGE** |
| | ) | |
| Appellee. | ) | (Sentencing) |

FOR THE APPELLANT:       FOR THE APPELLEE:


**STEPHEN WALLACE**
Public Defender

**LESLIE HALE**
Asst. Public Defender
P.O. Box 839
Blountville, TN 37617

**JOHN KNOX WALKUP**
Attorney General & Reporter

**CLINTON J. MORGAN**
Counsel for the State
450 James Robertson Pkwy.
Nashville, TN 37243-0493

**FRANK A. HARVEY**
District Attorney General, pro tem
P.O. Box 703
Kingston, TN 37763


OPINION FILED:_____


**SENTENCE MODIFIED AND REMANDED**


**JOHN H. PEAY,**
Judge

**O P I N I O N**

The defendant was charged by presentment on February 8, 1994, with eighteen counts of incest, eighteen counts of statutory rape, and fourteen counts of sexual battery. On September 30, 1994, the defendant entered an Alford plea and pled guilty to two counts of sexual battery and one count of assault. As a part of the plea, the defendant agreed to sentences of two years on each of the sexual battery charges and a sentence of eleven months, twenty-nine days on the assault charge. He further agreed that all sentences would run consecutively. The defendant was ultimately denied probation or any other alternative sentence and was ordered to begin his incarceration. In this appeal, the defendant contends that the trial court erred by refusing to sentence him to Community Corrections or probation.

After a review of the record and applicable law, we find that the trial court erred when it denied the defendant's request for Community Corrections. Thus, we remand this cause to the trial court for entry of an order consistent with this opinion.

The charges against the defendant stemmed from allegations made by the defendant's foster children. The defendant and his wife, Cindy Boston, had decided to become foster parents in 1988 after learning that Mrs. Boston could not have children. The Bostons subsequently provided a home for several foster children and at one point had as many as six children in their home. In September 1994, three of the foster children, all boys, accused the defendant of sexually abusing them.

The defendant entered the above described plea and on December 15, 1994, the trial court held a sentencing hearing to determine how the defendant should serve his already determined sentences. At the conclusion of that hearing, the trial judge

2

ordered the defendant to the Hay House, a residence operated under the Community Corrections program, until the defendant could devise a suitable plan for receiving counseling.

A second hearing to determine how the defendant should serve the remainder of his sentence was held on February 23, 1995. At this hearing, the trial court heard testimony from Dr. Nancy Lanthorn, a licensed clinical psychologist, who had been counseling the defendant since December 1994. At that time, Dr. Lanthorn testified that the defendant would benefit more from one-on-one sessions with a therapist rather than group therapy sessions such as those offered by the State for incarcerated felons. She further stated that the defendant would also benefit from joint counseling with his wife. She noted that she had seen the defendant for seven sessions and that he had made excellent progress thus far. Dr. Lanthorn testified that incarceration would be detrimental to the defendant's progress. On cross-examination, Dr. Lanthorn testified that she had not spoken to any of the victims in making her recommendation for the defendant's treatment.

At the conclusion of the hearing, the trial judge denied the defendant's request for probation. He further denied the defendant's request for Community Corrections because he was of the erroneous impression that the defendant was not eligible for Community Corrections. The defendant then appealed to this Court.

On appeal, a panel of this Court found, upon a de novo review, that while the defendant was eligible for probation, he was not a suitable candidate. State v. Boston, 938 S.W.2d 435 (Tenn. Crim. App. 1996). The panel, which was identical in composition to this one, cited the circumstances of the offense, including the defendant's

abuse of a position of private trust, as sufficient grounds upon which to deny the defendant probation. This Court concluded that the defendant had failed to establish his suitability for the privilege of probation. Boston, 938 S.W.2d at 438. As to the possibility of Community Corrections, this Court determined that the defendant was statutorily eligible for such a sentence, and that the trial court erred when it incorrectly interpreted the Community Corrections Act and determined that the defendant was not eligible. However, this Court then remanded the cause to the trial court so that the trial court could properly determine the defendant's suitability for Community Corrections. Boston, 938 S.W.2d at 439.

On remand, the trial court held another hearing to determine the defendant's suitability for Community Corrections. At this hearing, the defendant testified that he was now employed full-time in commercial construction and that he had no contact with children in his job or elsewhere. He further testified that since the last hearing he had continued his treatment with Dr. Lanthorn and was now simply going for therapy on an "as needed" basis. However, he noted that he does continue to attend group sessions of Adult Children of Alcoholics at least once or twice a week. The defendant testified that he had never attended group therapy specifically for sex offenders.

He further told the court that he had been at the Hay House from December 16, 1994, until February 23, 1995. He testified that after this period of time he had been ready to be moved to an "in-house" program rather than maintain residence at the Hay House. The defendant further stated that he had destroyed everything with his "stupid acts" and that he had had no contact whatsoever with the six children that were removed from his home as a result of the charges brought against him.

4

Lisa Christian, the detective who originally investigated the allegations against the defendant, also testified at the hearing. She testified that she had taken statements from the defendant and the victims and that the victims' reports were significantly different from that of the defendant.

Following this testimony, the trial court evaluated the evidence introduced at this sentencing hearing as well as evidence from the original hearing. From his review of this evidence, the trial judge concluded that the defendant was not suitable for Community Corrections. The defendant now appeals this determination.

When a defendant complains of his/her sentence, we must conduct a de novo review with a presumption of correctness. T.C.A. § 40-35-401(d). The burden of showing that the sentence is improper is upon the appealing party. T.C.A. § 40-35-401(d) Sentencing Commission Comments. This presumption, however, "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

The Community Corrections Act of 1985 establishes a community based alternative to incarceration for certain offenders and sets out the minimum eligibility requirements. T.C.A. §§ 40-36-101 through -306. This Act does not provide that all offenders who meet the standards are entitled to such relief. State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987).

The purpose of the Tennessee Community Corrections Act of 1985 is to establish a policy to punish selected, nonviolent felony offenders through community-

based alternatives to incarceration. The goals of the Community Corrections Act include the following: maintaining safe and efficient community correctional programs, promoting accountability of offenders to their local community, filling gaps in the local correctional system through the development of a range of sanctions and services, reducing the number of nonviolent felony offenders in correctional institutions and jails, and providing "opportunities for offenders demonstrating special needs to receive services which enhance their ability to provide for their families and become contributing members of their community . . . ." T.C.A. § 40-36-104(1)-(5).

Before one is entitled to community corrections, he or she must be eligible pursuant to T.C.A. § 40-36-106(a). Mere eligibility, of course, does not end the inquiry. We must also look to the Criminal Sentencing Reform Act of 1989. Under this Act, trial judges are encouraged to use alternatives to incarceration. T.C.A. § 40-35-102(6) states that "a defendant who does not fall within the parameters of subdivision (5) and who is an especially mitigated or standard offender convicted of a Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Militating against alternative sentencing are the following considerations:

> Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct; [c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or [m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant. . . .

T.C.A. §40-35-103(1)(A)-(C). See also State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

In this case, the defendant is not eligible under the definitions of T.C.A. § 40-36-106(a) because the offenses he committed were crimes "against the person." T.C.A. 40-46-106(a)(2). However, he argues that he is eligible under T.C.A. § 40-36-106(c) which provides:

> Felony offenders not otherwise eligible under subsection (a), and who would be usually considered unfit for probation due to histories of chronic alcohol, drug abuse, or mental health problems, but whose special needs are treatable and could be served best in the community rather than in a correctional institution, may be considered eligible for punishment in the community under the provisions of this chapter.

The defendant argues that he meets the above criteria and that as a result, he should be sentenced to Community Corrections. The trial court found that the defendant did not satisfy the statutory requirements and thus denied his request for Community Corrections. In doing so, the trial court reviewed a report from Dr. Peter Young, a clinical psychologist who evaluated the defendant on November 11, 1994, as well as the testimony and report of Dr. Lanthorn. In his report to the court, Dr. Young stated that the defendant would benefit most from individual psychotherapy on a weekly basis for an extended period of time. He further noted that if incarcerated, "it would be unlikely that [the defendant] would fare well or improve in his functioning." However, Dr. Young also noted in his report that the information used in writing the report came mainly from the defendant and the defendant's attorney. He stated that he did not speak with the victims and that because of this, "there is necessarily a lack of information with which to assert such conclusions strongly."

The trial court concluded that the above statement in Dr. Young's report meant "that he wanted more information, at least if he intended, to further advocate the position he had taken in the case relative to [the defendant]." Therefore, the trial court concluded, "I find as a fact that he's not fully informed about this case."

The trial court then reviewed the testimony of Dr. Lanthorn from the previous sentencing hearing as well as an updated report. In the updated report, Dr. Lanthorn stated that the defendant had continued his therapy sessions through December 8, 1995, and that he had "made considerable progress and was dealing with some lingering feelings of grief regarding the loss of his children." She further stated that in her opinion, the defendant posed no risk to the community and that no purpose would be served by his being incarcerated. Dr. Lanthorn concluded that the defendant had been rehabilitated and that his future therapy would be performed on an as needed basis.

The trial court observed that because Dr. Lanthorn had not interviewed the victims in this case nor other children who had lived with the defendant but were not sexually abused, she "was not possessed with sufficient information to develop any kind of a program [for the defendant] because she never recognized the problem. . . . In this case, the record will disclose that when Dr. Lanthorn testified, she was the subject of extensive cross examination, questions by General Harvey. The record will show that she was not fully informed." The trial judge further stated, "I make a positive finding that Dr. Lanthorn's counseling plan is inadequate as a matter of law for reasons stated and so is Dr. Peter Young's." The trial court then simply concluded that the defendant does not meet the criteria for a sentence of Community Corrections.[1]

In the defendant's previous appeal of his sentence, this Court specifically directed the trial court as to what findings of fact he must make in granting or denying the defendant's request for Community Corrections. The Court stated that a determination

---

[1] At the conclusion of the defendant's original sentencing hearing, the trial judge stated that it was his belief that the defendant was not statutorily eligible for Community Corrections. In doing so, the trial judge stated, "Now, I with some reluctance deny [the defendant] the right to participate in a private program at the Hay House and I predicate my reasoning upon the statutory prohibition." Thus, it appears that the trial court's erroneous interpretation of the statute was the main reason for denying the defendant's request for Community Corrections. It is unclear why the trial judge's position on this matter differed significantly on remand.

of the following is required: "(1) the offender has a history of chronic alcohol, drug abuse, or mental health problems, (2) these factors were reasonably related to and contributed to the offender's criminal conduct, (3) the identifiable special need (or needs) are treatable, and (4) the treatment of the special need could be served best in the community rather than in a correctional institution." Boston, 938 S.W.2d at 439. The trial judge failed to follow the instructions of this Court. His findings, as recited above, are not sufficient to deny the defendant Community Corrections. The trial court simply stated that he doubted the validity of the opinions of two experienced clinical psychologists. Accordingly, we conclude that the trial court's failure to follow this Court's previous opinion leaves us now with the task of reviewing the evidence and properly sentencing the defendant.

First, we must determine whether the defendant has a history of chronic alcohol, drug abuse, or mental health problems. In her first report to the trial court, Dr. Lanthorn stated that the defendant exhibited twelve of the eighteen symptoms of Attention Deficit Disorder and that he suffered from mood swings, depression, and chronic low self-esteem. She further noted that the defendant exhibited psychological dysfunctions of mild severity. She pointed to the defendant's submissive dependency as his most striking characteristic. In her later report, which was introduced as evidence at the most recent sentencing hearing, Dr. Lanthorn stated that it was her opinion that the defendant had been successfully rehabilitated and that he should continue counseling on an as needed basis.

Dr. Peter Young stated in his report that the defendant "manifested a high average to nearly superior intellectual functioning," but that he did intermittently display poor judgment and experience some problems in perceptual accuracy. Dr. Young further noted that the defendant most likely had been unaware of how unresolved issues from his

9

past might have led him to engage in inappropriate interactions with some of the children.

Thus, it appears from the evidence above that the defendant had been suffering from some form of mental health problems. We find that his history of mental difficulties, coupled with his ongoing need for group therapy and individual therapy on an as needed basis, is sufficient to warrant a finding of fact that the defendant has a history of mental health problems.

Second, it further appears that the defendant's mental health problems were reasonably related and contributed to his criminal conduct. Dr. Young stated in his report that the defendant struggles with issues from his past and that such issues are likely what led him to take on the responsibility of foster children in the first place. He further stated that the defendant's "psychological turmoils" caused him to engage in inappropriate behavior with his foster children. Dr. Young also noted that it was unlikely that the defendant had intentionally attempted to harm any of the victims. Rather, the defendant tried to be "a good individual," but was unable to do so because of unresolved past issues. Thus, we conclude that the defendant's mental health problems contributed to his criminal acts.

Next, we conclude that the defendant's needs are treatable. The above recited testimony of both Dr. Young and Dr. Lanthorn clearly demonstrates that the defendant is responding to individual and group therapy and that incarceration would be detrimental to his rehabilitation.

And finally, as the testimony of Dr. Young and Dr. Lanthorn also reflects, the defendant would benefit more from continuing his current plan of therapy rather than

10

entering a correctional institution. We further note that the defendant's earlier placement at the Hay House was quite successful, and we see no reason to disrupt the defendant's rehabilitation with incarceration. The defendant poses no threat to the community, has previously complied with the requirements of Community Corrections, is continuing his therapy, and is employed at a full-time job. Therefore, we conclude that the trial court erred when it denied the defendant's request to be placed on Community Corrections. We reverse the trial court and remand this cause to the trial court for the entry of an order sentencing the defendant to Community Corrections with reasonable conditions to be set by the trial judge.

_____

JOHN H. PEAY, Judge

CONCUR:

_____

DAVID G. HAYES, Judge

_____

WILLIAM M. BARKER, Judge